Cranch, C. J.,
delivered the opinion of the Court, as follows: —
This is an indictment on the Act of Assembly of Maryland, 1777, c. 12, § 9, for joining in marriage one Mary Anne Densley, being under the age of sixteen years, without the consent of her parents. The indictment sets forth that Andrew Thomas McCormick, clerk, &c. without the consent of the said Hugh Densley, the father, and without the consent of Mary Anne Densley, the mother, unlawfully, knowingly, and wilfully, &c.
It has been moved in arrest of judgment, —
1. That it is not alleged in the indictment, that the traverser *597 ■was a minister, or person capable of- legally joining persons in marriage.
2. That it does not state the marriage to have been without the consent of the guardian.
The Act of Assembly is in these words, — “If any minister shall join in marriage any male under the age of twenty-one years, or any female under the age of sixteen years and not before married, without the consent of the parent or guardian of every such person, personally given or signified under the hand and seal of the said parent or guardian, and attested by two witnesses, he shall forfeit and pay £500 current money.”
It has been correctly contended, on the part of the traverser, where an act is by statute forbidden to be done by persons of a certain description only, an indictment, grounded on such statute, must, by a substantive averment, bring the traverser within that description. No offence can be committed under the ninth section of the act of 1777, c. 12, on which this indictment is founded, but by a minister. And it seems, by the purview of the act, that it must be by such a minister as by the third section of the same act is authorized to celebrate rites of marriage between white persons. It was necessary therefore that the indictment should state by a direct allegation that the traverser was such a minister at the time when the offence is charged to have been committed. This necessity seems to be admitted by the attorney for the United States, who has with much ingenuity, contended that there is such a direct allegation in the indictment. The traverser is called Andrew Thomas McCormick, clerk. It is said that a clerk, in the technical language of the law, means an ordained minister of religion; that there is no statute in force here which makes it necessary in an indictment to give the offender his proper addition, or to name him by his mystery or-degree; and as the process of outlawry is unknown in the practice of our courts, the word clerk shall not be considered as a mere addition descriptive of the person at the time of finding the indictment, but may stand for a positive affirmation that the traverser was at the time of committing the offence such a minister as is contemplated in the ninth section of the act; that the word “ being ” is necessarily to be understood, and that the meaning is the same as if it had been written, thus, — that A. T. M. being clerk committed the offence; which, according to the books would be a sufficient averment.
But without deciding whether the statute of additions is in force here, or whether process of outlawry will lie upon an indictment, it is evident that the word clerk is used by way of addition, or description of the person, and although such an addition may not be absolutely necessary, yet it does not follow that it must there *598 fore have another meaning. In its present form it is only an allegation that the traverser was a clerk at the time of the indictment found ; and the allegation would be equally true although the tra-verser were not a clerk at the time when the offence is charged to have been committed. To give it the meaning which is contended for on the part of the prosecution, the word “ being ” must be added, which would not be justified by any precedent. But if the word clerk implies a direct averment that the traverser was a clerk at the time of the offence alleged, yet it is not an averment that he was a minister authorized to celebrate the rites of marriage ; for the term clerk includes both the regular and secular clergy, all of whom were not authorized to solemnize marriage. It may also include clerks of courts, &c., and therefore the averment would be too uncertain.
The second objection to the indictment seems to be equally fatal, for I deem the position to be correct, that all the circumstances which are necessary to constitute the offence must be set forth in the indictmentand that an indictment cannot be good which, if true in all its parts, yet leaves a possibility that the traverser may be innocent. It is true that if a statute contains a saving clause, an exception, or a proviso, which did not constitute a part of the description of the offence, it is not necessary that the indictment on that statute should aver the traverser not to be within the benefit of such saving clause, &c., for there the traverser is left to avail himself of the exception by plea or evidence. But if a part of the description of the offence consists of a negative proposition it is as necessary, in an indictment for that offence, to state the negative as the affirmative part of that description.
If the indictment had not alleged the want of consent of either parents or guardian, it would not have described any offence at all. The want of consent is the essence of the misdemeanor. If then an averment of the want of consent of parents is necessary, why not also an averment of the want of that of the guardian ? It is said there was no guardian; but that does not appear. As well may the traverser say there were no parents, and therefore there was no offence in marrying without the consent of parents. The indictment does not aver that the parents were living, and if they were, still there might be a guardian. The indictment would have been equally good if it had stated that the marriage was without the consent of the guardian, and had omitted to aver the want of consent of the parents. Yet it cannot be contended that such an indictment would have been sufficient, without an averment that there were no parents living, or none competent to consent, and that there was a guardian who could consent. The *599 offence therefore is not sufficiently set forth. The indictment does not aver all the facts which constitute the misdemeanor.
The judgment must be arrested.
Fitzhugh J.,
contra. This is a motion in arrest of judgment on a verdict finding the traverser guilty under an indictment which charged “ that, Andrew Thomas McCormick, clerk, on 23d of February, 1802, did with force and arms, unlawfully, knowingly, and wilfully solemnize matrimony between Henry Lawler, a bachelor, and M. A. Densley, a single woman, daughter of one H. D. without the consent of the said H. D., and without the consent of M. A. D., wife of said H. D., and mother of said M. A. D., personally given or signified under the hand and seal of said H. D. and M. A. D. his wife, and attested by two witnesses, the said M. A. D. daughter of said H. D. being an infant under the age of 16 years, and not before married,” &c. Two reasons have been assigned for arresting the judgment.
1. Because the indictment does not aver that the traverser was a minister or person capable of legally joining in marriage, at the time of the offence.
2. Because it does not state that the marriage was without the consent of the guardian.
In support of the first ground, it has been insisted by the counsel for the traverser, that the word clerk is not a sufficient allegation that the defendant acted in the character of a minister, and they therefore infer that he may have acted innocently, and that as the Act of the Maryland Assembly subjects no other persons except ministers to the penalty, the Court cannot by any argument, intendment, or implication, condemn for a crime when the jury have not expressly found him guilty,
By the third section of the act of 1777, eh. 12, “ The rites of marriage between any white persons, subjects or inhabitants of this State, shall not be celebrated by any persons within this State, unless by ministers of the Church of England, ministers dissenting from that church, or Romish priests, appointed or ordained according to the rites and ceremonies of their respective churches ; or in such manner as has been practised in the State by the society of people called Quakers ; and if any person shall celebrate marriage, &c., contrary to the meaning of this act, he shall forfeit &e., five hundred pounds current money.”
9th Section. “ If any minister shall join in marriage any male under the age of 21 years, or any female under the age of 16 years and not before married, without the consent of the parent or guardian of every such person, personally given or signified under the hand and seal of the said parent or guardian and attested by two witnesses, he shall forfeit &c., five hundred pounds current money.” >
*600 In determining on the weight of the first objection it will be necessary to see what is the legal acceptation of the word clerk, particularly as it has been contended that it is not synonymous with clergyman. Clerk, as defined in the law-books, is one who belongs to the holy ministry of the church and is properly a minister or priest. The word clerk is supposed to be derived from the Greek word «aisto — voco, to call, because ecclesiastical persons insisted that they were called into the service and ministry of God and therefore, claimed exemption from temporal jurisdiction. Hence a clerk, minister, or servant are synonymous. Or from xfojQos — sortitio, because the clergy were supposed to have been allotted to divine service. It seems to be nomen generalissimum under which are comprehended both regular and secular clergy, not only such as live within certain prescribed rules, as abbots, priors, monks, &c., but also bishops, deacons, parsons, and vicars, — and is generally deemed descriptive of all ecclesiastical persons in holy orders. Indeed ecclesiastical persons are said to be well described by the words, Legum Doctor and sacris ordinibus constitutus. 1 Hawk. P. C. ch. 19, <§. 3. The statute of 1 Eliz. c. 2, subjects “ any parson, vicar, or other minister whatsoever, who ought to say the common prayer and shall refuse to use it in church, to one year’s profits of all his spiritual promotions and one month’s imprisonment for the first offence,” &c., and yet in an indictment for. an offence against this statute, it has been held that the word clericus shows sufficiently that- the party was within holy orders, although the word clerk is not used in the statute. 1 Hawk. P. C. ch. 7. The word clerk then being equivalent to, and descriptive of, clergyman in England where there are various grades of clergy with various privileges and emoluments, some sinecures, others with cures. I conclude a fortiori, that the word clerk describes a clergyman with sufficient certainty here, where no such variety exists, and where no ambiguity can arise as to the character in which the defendant acted.
But it has been argued that where a statute creates an offence, the words of description should be precisely pursued in an indictment under the statute. The quotation just mentioned, respecting the exposition of the statute of Eliz. js alone an answer to, and obviates this objection; for there the word clerk .was not used and yet it might have been insisted there, as it has been here, that the word clerk might refer to and describe a- clerk of court, and so by possibility the defendant be innocent notwithstanding the indictment, be literally true; or it might, with a fairer prospect of success, have been urged that, though clerk meant clergyman, yet it might be understood as applicable to *601 the regular clergy instead of the secular clergy and therefore not contemplated by that statute. If the offender be brought within the purview of a statute, it is sufficient; and if by a rational construction of the whole indictment a person is described with such certainty that it is impossiblé to mistake him for another, or the character in which he acted; or that he may know how to defend himself against the charge ; or that he may plead in bar of another prosecution ; or if it can judicially appear fo the Court what punishment is proper, such an indictment ought to be sustained. In the ease now before us, the traverser has been convicted of having in character of clerk, solemnized marriage. If the word clerk receives one acceptation the offence is indisputably made out: if tortured to mean a clerk of a court or any thing else except minister, then he cannot be guilty' of solemnizing marriage, though that fact is expressly found by the jury. In one sense of the word, the defendant may have consummated the marriage: in the other he could not. In this view of the case no rule of construction justifies the Court to lay hold of a solitary expression for the purpose of acquitting the traverser; when a liberal view of the whole indictment taken together with the verdict could leave no doubt on the mind as to the character in which he acted. Though judgments in favor of life and in avoidance of penalties are generally construed strictly, yet they are expounded like other writings by taking them altogether and introducing one part in explanation of another, (4 Com. Dig. 397, G. 5,) so that a general • or ambiguous expression may be rendered certain; and certainty to a common intent is sufficient in an indictment. Co. Litt. 303, a; 5. Co. 121, a.
There seems more difficulty in the second objection, that the indictment does not set out the want of the guardian’s consent; but still I am inclined to think that this omission is not fatal. It is a rule that when there is a negative in the description of an offence in a statute, the affirmative of which would excuse the traverser, it need not be set forth in the indictment, but must be pleaded by the defendant or shown as his excuse or justification. 5 T. R. 84; 1 Hawk. P. C. ch. 10; 2 Hawk. ch. 25 § 115; 2 Ld. Raym. 1370; 2 Burr. 1035. And I can find nothing’ which looks like an exception to this rule but eases of indictments in England for offences under the game laws, where the qualifications must be all negatived in the indictment. This maybe accounted for on the ground of there being an immense number of statutes restrictive of the privilege of killing game, commencing as early as 13 Rich. 2, with such a variety of penalties and qualifications, that it might be uncertain what j,udg *602 ment the court could render or by what evidence the traverser could protect himself, unless the supposed offence should be reduced to the most definite and unquestionable form. Another reason why the game laws form an exception to the general rule may be, that the offences under them are punishable by justices of the peace, whose limited jurisdiction, the supreme courts have been unwilling to enlarge or favor. But in the case of the Queen v. Matthews, 14 Vin. 3, S. C. (10 Mod. 27,) on an exception taken to a conviction on 4 and 5 Anne, for the preservation of game, it was held that if it had been laid generally, “ that he not being a person qualified according to the law,” it would have been well enough ; but the qualifications having been distinctly and- severally mentioned, the omission of one is fatal. It might perhaps have been sufficient if the indictment in the present case had barely stated the solemnization of the marriage of an infant, omitting consent altogether, because the -mischief intended to be avoided by the law, was the improper influence which might be used on persons wanting discretion and judgment to direct them in so important a step as marriage, and any thing which wq,uld justify or excuse such intermeddling might come out in evidence or be pleaded. The prosecutor cannot prove the negative, that consent was not given in writing, but the traverser could have done so; and the law evidently meant to impose on him this necessity by requiring a license in writing properly authenticated, thereby furnishing defendant with the means of justifying himself; this being in writing might and ought to have been preserved if it ever existed. When the parent delivers this writing to the minister, it is no longer within his control or of any other person except the minister, and therefore it would be requiring an impossibility to insist on its being-produced on the part of the prosecution, and it is a rule that that which need not be proved need not be averred.
The statute of additions is said to be in force in Maryland. Be it so. 1 Hawk. c. 7, shows that clerk is definite enough; clerk is a good addition for a doctor of divinity. 2 Hawk. c. 23, § 109. The addition should refer plainly to the person indicted, so that one may not be substituted for another. But it has been objected, that the person who drew this indictment was sensible that the indictment should have been special in its averment of the requisites of the law, and having inserted some, the omission of others is fatal. This offence is in my opinion completely stated by making out either alternative requisite, and the guardian’s consent is as distinct from the parent’s as if it had been in another section — as much so as the written license of the clerk, which is also made a protective requisite; and it *603 has not been contended that the indictment should have negatived that. ' But with respect to the insertion of one requisite and the omission of others; where an indictment is brought on a statute which has general prohibitory words, it is sufficient to charge the offence generally in the words of it; and if a subsequent statute’ or clause in the same statute, excuse or except persons particularly circumstanced out of the general words, it must be pleaded, or given in evidence: as an indictment on 5 Eliz. c. 4, for exercising the trade of a tanner, not having served an apprenticeship of seven years, is sufficient without averring the want of other qualifications, &c.
But when the words of a statute are descriptive of the nature of the offence or the purview of the statute, or are necessary to give a summary jurisdiction, the indictment must specify it in particular words, as game acts ; swearing; counterfeiting coin ; &e. 4 Com. Dig. 397, G. 5. An indictment need not ascertain more than shows the offence, not that which aggravates it. 4 Com. Dig. 398, G. 5. Nor more certainty than the words of the statute import. But it should use terms proper or peculiar to the offence. If an offence appears in the indictment for which it may be maintained it is sufficient, though bad in other parts. Com. Dig. 408, Judgment, N.; 1 Salk. 384, 385. This offence is completely stated by either disjunctive.-
In Tremaine’s P. C., a person was indicted under the statute of Eliz., to impose a pecuniary fine on a resident within the king’s realm for not going to church, not having a reasonable excuse. The indictment averred, that the defendant had no reasonable excuse, but omitted his being a resident of the king’s realm. This shows that the insertion of one of the requisites does not render it necessary to enumerate them all. 4 Hawk. c. 10, says it is unnecessary to negative' the excuse. The obvious meaning and purview of the law is that the consent of the parents is to be had if there be any capable, &c.; if not, then of the guardian, if there be one legally appointed. The traverser’s counsel have resisted the claim of the United States on another ground: that it is uncertain from the indictment when he was clerk, — whether at the time of the supposed offence committed, or at the date of the indictment.
In 2 Hawk. P. C. ch. 25, § 61, 114, it is said to be a sufficient description of a defendant to say that he, existens so and so, as brings him within the purview of the statute, did the act without alleging that he was so at the time of the fact; that shall be intended: but where existens applies to the fact, it is otherwise; as if an indictment states that A disseized B of land being the freehold of the said B, it is fatal, because it is indif *604 ferent whether it was B’s freehold at the time of the disseisin, or the finding the indictment — and in section 61, it is said to be the natural construction of the participle existens going before the verb to which it is the nominative; but in the case of the disseisin, it is doubtful whether it is nominative to the verb, or applied to the thing which is the subject of the action; so that the difference as to its construction appears to be between its application to the person and the fact, and Johnson’s case, Cro. Jac. 610, is pointed in support of this distinction. So, 4 Com. Dig. 397 ; 2 Roll. 226.
From the view I have taken of the points submitted to the Court, it would appear to be over nice and critical if this judgment should be arrested, and in the language of a learned law writer, “ as on the one hand the court will not by any argument or inference condemn for a crime whereof the jury have not found the party guilty; soon the other hand it will not suffer him to escape on a trivial exception : but the judgment must be in great measure left to the discretion of the court, who from the circumstances of each particular case, the comparison of precedents, and the plain reason of the thing, seem to have gone within those rules as near as possible.” In a case circumstanced like the one before us, where the indictment brings the offence within the purview of the statute; where the traverser with a knowledge of the infancy of the daughter, solemnizes a marriage without the consent of her parents, and without pleading or showing any justification or excuse, I think the judgment should not be arrested.